UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEWPORT YACHT CLUB, a Washington nonprofit corporation, individually and on behalf of its members; WILLIAM S. WEINSTEIN and LEANNE C. WEINSTEIN, and their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF BELLEVUE, a Washington municipal corporation,<br><br>Defendant. | CASE NO. C09-0589-MJP<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant City of Bellevue's motion for summary judgment in the action brought by Plaintiffs Newport Yacht Club ("NYC") and William and Leanne Weinstein ("Weinsteins"). (Dkt. No. 151.) Defendant asks the Court to enter summary judgment against the Weinsteins' remaining claim, enter judgment against Plaintiff Newport Yacht Club under Federal Rule 54(b), and lift the stay with bond pending appeal so it may

collect attorney's fees. Having reviewed the motion, Plaintiffs' response (Dkt. No. 154), Defendant's reply (Dkt. No. 162), and all related filings, the Court DENIES Defendant's motion.

**Background**

Plaintiff Newport Yacht Club ("NYC") is a nonprofit corporation that represents residents of the community of Newport Shores, Washington, and maintains a marina located near the mouth of Coal Creek, which flows through Southern Bellevue into Lake Washington. (Dkt. No. 55 at 2-3.) Plaintiffs William and Leanne Weinstein own two parcels of land that straddle the mouth of Coal Creek. (Id.)

NYC and the Weinsteins originally filed suit in 2003 alleging violations of the Clean Water Act and other statutes arising from the City of Bellevue's design and management of stormwater and sedimentation facilities in the Coal Creek basin. (Id.) In August 2004, the parties entered into a Settlement Agreement. (Dkt. No. 1, Ex. A.) In the Settlement Agreement, among other provisions, the City of Bellevue agreed to implement a Coal Creek Stabilization Project (§ 4), the Weinsteins agreed to construct a flood control berm (§ 6), and the City granted the Weinsteins permission to build a salmon habitat enhancement project ("SHEP") (§ 7).

In April 2009, Plaintiffs NYC and the Weinsteins filed the present suit in the U.S. District Court for the Western District of Washington, alleging that the City of Bellevue failed to implement the stabilization project, failed to cooperate in securing permits for the SHEP, and wrongfully retaliated against the Weinsteins by thwarting or delaying issuance of salmon-related permits. (Dkt. No. 1 at 4-8.) In March 2010, U.S. District Judge Robert S. Lasnik granted Defendant's motion for summary judgment. (Dkt. No. 116.) Specifically, Judge Lasnik found that the City had reached its budget cap under the source control provisions, that the City did not violate its duty of good faith and fair dealing regarding its obligation to increase sediment

capture capacity, and that the City did not violate its obligations regarding the SHEP because the Weinsteins' project did not constitute a SHEP. (Id. at 4, 8, 10.) Judge Lasnik concluded that the project was not a "salmon habitat enhancement project" because "[p]laintiffs did not improve upon a *place* where salmon are ordinarily found." (Id. at 10 (emphasis in original).) "Instead, they created an incubation habitat on their property where young salmon may be hatched and reared." (Id.) Judge Lasnik also granted the City summary judgment in its counterclaim against the Weinsteins, ruling that they failed to construct the berm required by the Settlement Agreement. (Id. at 14.)

In July 2010, Judge Lasnik also ruled that, under the terms of the Settlement Agreement, as the prevailing party, the City may recover its costs of $33,573.90 and its attorney's fees in the amount of $401,070. (Dkt. No. 141.) Upon Plaintiffs posting a supersedes bond, Judge Lasnik entered an order staying execution of the judgment and fee award pending appeal. (Dkt. No. 143.)

Plaintiffs appealed to the Ninth Circuit, which in April 2011 affirmed the district court's summary judgment order on the issues of the source control budget cap, the sediment capture capacity, and the flood control berm, but reversed the summary judgment order regarding the SHEP. (Dkt. No. 145, No. 10-35389 (9th Cir. April 27, 2011) (memorandum opinion).) In its memorandum opinion, the Ninth Circuit held that "the phrase 'salmon habitat enhancement project' is subject to more than one reasonable meaning, and the mutual intent of the parties remains a question of fact to be determined at trial." (Id.) The Ninth Circuit remanded to this Court for further proceedings. (Id.)

The remaining dispute in this case centers on Art. 7 of the 2004 Settlement Agreement. (Dkt. No. 1, Ex. A.) Art. 7 authorizes the Weinsteins to construct one or more salmon habitat

enhancement projects, prohibits the City from opposing the development, and requires the City to cooperate with the Weinsteins in securing permits, so long as the SHEP complies with applicable City Code provisions. (Id.)

**Discussion**

A. <u>Jurisdiction and Applicable Law</u>

The Court has jurisdiction over this case, because the district court in 2004 "retain[ed] jurisdiction to enforce the terms and conditions of the Settlement Agreement." (Dkt. No. 1, Ex. A, Agreed Order of Dismissal.) A settlement agreement is a contract, so the Court applies state law to interpret it. See <u>Northwest Acceptance Corp. v. Lynnwood Equip., Inc.</u>, 841 F.2d 918, 920 (9th Cir. 1988). The Settlement Agreement specifies that it shall be "interpreted under the laws of the state of Washington." (Dkt. No. 1, Ex. A, Art. 17.4.) Under Washington law, the provisions of a contract must be construed together and each provision must be given effect. <u>Salvo v. Thatcher</u>, 128 Wn. App. 579, 587 (2005). "The cardinal rule with which all interpretation begins is that its purpose is to ascertain the intention of the parties." <u>Berg v. Hudesman</u>, 115 Wn.2d 657, 667 (1990). The meaning of a contract provision is a mixed question of law and fact, with the intent of the parties controlling. <u>Forbes v. Am. Bldg. Maint. Co. W.</u>, 148 Wn. App. 273, 286 (2009).

B. <u>Summary Judgment</u>

There are three main issues associated with Plaintiffs' remaining claims: (1) whether the Weinsteins' project is a SHEP, as the term was intended by the parties in the 2004 Settlement Agreement; (2) whether the Weinsteins' project complies with applicable Bellevue Code provisions, triggering the City's duties of cooperation and non-opposition under the Settlement

Agreement, and; (3) if so, whether the City has cooperated and not opposed the project, as required by the Settlement Agreement.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). The nonmoving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The Ninth Circuit has determined that the first issue, whether the Weinstein's project is indeed a SHEP, is a genuine factual dispute. (Dkt. No. 145 at 4-5.) In its memorandum opinion, the Ninth Circuit held that "the phrase 'salmon habitat enhancement project' is subject to more than one reasonable meaning, and the mutual intent of the parties remains a question of fact to be determined at trial." (Id.) Nothing submitted to this Court by the Defendant since the Ninth Circuit's memorandum goes to the issue of the mutual intent of the parties regarding the term "SHEP." Therefore, a factual issue remains regarding the first issue.

The second issue, whether the Weinstein's salmon project complies with City Code, is also a genuine factual dispute when all reasonable inferences are drawn in favor of the nonmoving party. This second issue is essential to Plaintiffs' claims, because, under the Settlement Agreement, the City's obligations of non-opposition and cooperation are triggered only if the SHEP complies with existing City Code. (Dkt. No. 1, Ex. A, Art. 7.2 ("Subject to any SHEPs complying with applicable Bellevue City Code provisions, the City . . . shall not oppose

Weinstein's development . . . .").) The district court did not reach this issue in its previous summary judgment order, because it found the project was not a SHEP. (Dkt. No. 116 at 11-12.)

The City's evidence on this second factual question is not sufficient to prevail on a summary judgment motion. The first assertion made by the City, that the Weinsteins admitted Code deviations in the Voluntary Correction Agreement ("VCA") they entered with the City, fails to withstand scrutiny. While the Weinsteins did enter into a voluntary agreement with the City on June 23, 2010, the VCA appears to be primarily concerned with the residence the Weinsteins constructed on their property, not the salmon project at issue in the Settlement Agreement. (Dkt. No. 152, Ex. A, Drews Decl. at ¶ 2.) Second, and more importantly, the VCA explicitly states that its provisions are "not applicable to the claims set forth in Newport Yacht Club and William S. Weinstein v. City of Bellevue, United States Court of Appeals #s 10-35389 and 10-35403"—that is, the present case. (Dkt. No. 145 at ¶ 13(d).) Therefore, the VCA cannot be said to contain an admission by the Weinsteins that the salmon project is in violation of the Code.

Other evidence presented by the City may weigh in favor of the Court finding the Weinsteins' project violates the City Code, but not to a sufficient level to support a grant of summary judgment. For example, the City alleges that the Weinsteins "did not build . . . the stream enhancement project . . . to the approved plan." (Dkt. No. 152, Drews Decl. at ¶ 5.) The City also claims the "Weinsteins never applied for permits . . . for the ditches, pond, decking and landscaping as built," and that "[t]his, itself, violated the Bellevue City Code, which requires that an applicant submit plans and obtain approval from the City for what they intend to build." (Id. at ¶ 6 (citing Bellevue Land Use Code § 20.40.450).) However, the City's own actions create some doubt about the clarity of these violations. For example, when these matters first came to

the City's attention, the City did not find a violation, but instead instructed the Weinsteins to have their environmental consultant determine whether the project as built was functionally equivalent. (Id. at ¶ 7.) Only after the consultant concluded there was functional equivalence did the City find a violation. (Id.) The City also entered into a voluntary agreement with the Weinsteins to resolve outstanding issues, most of which appear to have been resolved. (Dkt. No. 145 at ¶ 13(d).) Therefore, while the City presents some evidence that the salmon project may have violated Code, when all inferences are drawn in favor of the Plaintiffs, a genuine factual dispute remains.

The third issue, whether the City has cooperated as required by the Settlement Agreement, also remains unresolved. The City asserts that "the injunctive remedy sought by the Weinsteins—'requiring the City to cooperate in providing necessary permits with respect to the salmon enhancement project'—is moot under the VCA." (Dkt. No. 151 at 19.) However, the City presents no evidence that the construction that has already taken place under the VCA is the limit of the "cooperation" that would be required of the City under the Settlement Agreement if the SHEP is found to comply with City Code. Additionally, the Settlement Agreement permits the Weinsteins to construct multiple "SHEPs," and it is not clear that the work that has been completed is all that is permitted under the Agreement. (Dkt. No. 1, Ex. A., Art. 7.)

When the factual record is viewed in the light most favorable to the non-movant, there are genuine issues of material fact. Therefore, Defendant's motion for summary judgment is denied.

C. Rule 54(b) Judgment

Defendant's second request is for the Court to enter final judgment against Plaintiff NYC under Fed. R. Civ. P. 54(b). (Dkt. No. 151 at 2.) Defendant argues that, because its obligations

under Art. 7 of the Settlement Agreement run exclusively to the Weinsteins, NYC is not the real party in interest as to the lawsuit's remaining claim. (Id.) The Court rejects this request, because Defendant does not offer convincing evidence that NYC is not a real party in interest, and because entering separate judgment would not be in the interest of judicial administration in this instance.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[a]n action must be prosecuted in the name of the real party in interest." The "real party in interest" is the person who has the right to sue under the substantive law. See U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986). The substantive law in this case is Washington contract law. (Dkt. No. 1, Ex. A, Art. 17.4.) Under Washington law, a party to a contract has a substantive right to bring an action for breach of that contract. See Kim v. Moffett, 156 Wn. App. 689 (2010). Therefore, Plaintiff NYC's status as a party to the Settlement Agreement gives it a substantive right under Washington law to bring an action for breach of contract.

Defendant argues that NYC was not party to Art. 7 of the Settlement Agreement. (Dkt. No. 162 at 7-8), and asks the Court to read a "several obligation" into the Agreement. (Id.) However, Defendant does not offer evidence sufficient to overcome the presumption that contractual obligations are owed to multiple promisees jointly. (Dkt. No. 162 at 7, citing Restatement (Second) of Contracts § 297(2).) Indeed, the City does not dispute that NYC stands to benefit from any improved salmon runs in Coal Creek. The United States Supreme Court has held that the "desire to use or observe an animal species, even for purely aesthetic purposes, is undeniably a cognizable interest . . . ." Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63 (1992). Because it is a party to the contract, and because it has a cognizable interest in the

presence of salmon in Coal Creek, the Court finds that Plaintiff NYC is a real party in interest under Rule 17.

Additionally, entry of final judgment against Plaintiff NYC is inappropriate at this time because it would not serve the interests of judicial administration. Rule 54(b) states, "When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Fed. R. Civ. P. 54(b). In Curtiss-Wright Corp. v. General Elec. Co., the United States Supreme Court stated that "a district court must take into account judicial administrative interests as well as the equities involved" because "[c]onsideration of the former is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeals" (internal quotations omitted). 446 U.S. 1, 7-13 (1980). Here, the Court finds that judicial administrative interests counsel against issuing separate judgments. The Court declines to enter judgment against Plaintiff NYC.

D. <u>Stay on Judgment and Fee Award</u>

The previously negotiated Settlement Agreement provides that in any action to enforce the agreement, "the prevailing party shall be awarded its reasonable attorney's fees and costs." (Dkt. No. 55, Ex. A, Art. 16.) The provision states, "The Court shall determine in its discretion the prevailing party for purposes of an attorney's fees award." (<u>Id.</u>)

Until a final disposition of the merits of this action, a piecemeal effort by the Defendant to recover attorney's fees is inappropriate. On July 19, 2010, the Honorable Judge Robert S. Lasnik ruled that that the City prevailed on all issues in this litigation, and that it was therefore entitled to recover its reasonable fees and costs. (Dkt. No. 141 at 2.) On Aug. 23, 2010, Judge

Lasnik entered a stipulated order approving bond and stayed judgment pending appeal. (Dkt. No. 142.) On April 27, 2011, the previous judgment was vacated and this case was reopened. (Dkt. No. 147.)

If Defendant prevails on the merits, it will be entitled to its reasonable attorney's fees and costs as the prevailing party. In the meantime, Defendant is protected by the supersedeas bond that is in place. There is no justification for lifting the stay of the previous fee award at this time.

**Conclusion**

The Court DENIES Defendant's motion in its entirety. Summary judgment is not appropriate because genuine disputes regarding material fact issues remain. And while the litigation continues, it is not appropriate to enter judgment against one plaintiff or to lift the stay on the prior fee award.

The clerk is ordered to provide copies of this order to all counsel.

Dated November 9, 2011.

Marsha J. Pechman
United States District Judge